UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PHYLLIS HALL and<br>PATRICK HALL,<br><br>        *Plaintiffs*<br><br>   vs.<br><br>ETHICON, INC, et al.,<br><br>        *Defendants* | )<br>)<br>)<br>)<br>) CAUSE NO. 3:20-CV-516-RLM-MGG<br>)<br>)<br>)<br>)<br>) |

OPINION AND ORDER

Plaintiffs Phyllis and Patrick Hall initiated this litigation on July 13, 2018, by filing a short-form complaint as part of In re Ethicon, Inc. Pelvic Repair System Products Liability Litigation, MDL No. 2327, No. 2:18-cv-01146, a multidistrict litigation pending in the United States District Court for the Southern District of West Virginia. The multidistrict litigation involves allegedly defective women's pelvic mesh products manufactured by defendant Ethicon, Inc., a wholly owned subsidiary of co-defendant Johnson & Johnson (collectively "Ethicon"). One of Ethicon's pelvic mesh products at issue in the multidistrict litigation is Prolift. This case was transferred to this court on June 22, 2020. Ethicon has moved for summary judgment seeking dismissal with prejudice of all of the Halls' claims. For the following reasons, the court **GRANTS** Ethicon's motion [Doc. No. 20] **IN PART**.

I. FACTUAL BACKGROUND

Dr. Carl Walker diagnosed Mrs. Hall with pelvic organ prolapse in November 2007 and implanted the Prolift pelvic mesh in December. Almost nine years later, Mrs. Hall met with Dr. Carlton Lyons because she was experiencing pelvic pain. Dr. Lyons diagnosed Mrs. Hall on June 27, 2016 with prolapse and mesh exposure, and recommended surgery to remove and otherwise correct the Prolift mesh. Mrs. Hall underwent surgery to fix these problems on September 21, 2016. During postoperative follow-up appointments in October and November 2016, Dr. Lyons explained to Mrs. Hall that the surgery was necessary because the Prolift mesh was defective.

Mr. and Mrs. Hall filed this suit directly into to the multidistrict litigation docket on July 13, 2018, asserting these claims in their short-form complaint made available for all plaintiffs in the MDL dockets:

Count III – Strict Liability – Failure to Warn

Count IV – Strict Liability – Defective Product

Count V – Strict Liability – Design Defect

Count VIII – Constructive Fraud

Count XII – Breach of Implied Warranty

Count XVI – Loss of Consortium

Count XVII – Punitive Damages

Ethicon now moves for summary judgment on all the Halls' claims except for Count XVII (Punitive Damages).

II. STANDARD OF REVIEW

2

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011) ("Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law."). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

### III.  CHOICE OF LAW

"[S]ince federal jurisdiction is based on diversity of citizenship, the choice-of-law rules to be used are those choice-of-law rules of the states where the actions were originally filed." In re Air Crash Near Chicago, 644 F.2d 594, 610

(7th Cir. 1981) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941)). For medical product liability cases that are directly filed in a multidistrict litigation action, West Virginia choice-of-law rules defer to "the choice of law [rules] that appl[y] [in] the place where the plaintiff was implanted with the product." In re Ethicon, Inc., 2014 WL 346717, at *7 (S.D. W. Va., Jan. 30, 2014). Since Mrs. Hall was implanted with the surgical mesh in Indiana, Indiana choice-of-law rules ultimately apply.

Indiana choice-of-law rules employ a modified *lex loci delicti* ("the place of the tort") analysis, which holds that "the substantive law of the place of the wrong will usually govern, 'unless the state where the tort occurred is an insignificant contact.'" Morgan v. Fennimore, 429 F. App'x 606, 609 (7th Cir. 2011) (quoting Simon v. United States, 805 N.E.2d 798, 804 (Ind. 2004)). Mr. and Mrs. Hall were Indiana residents when the Prolift implant surgery occurred, the surgery was performed in Indiana, and Mrs. Hall sustained her injuries in Indiana. Indiana substantive law provides the rule of decision.

IV.  DISCUSSION

A.  *The Indiana Product Liability Act*

Originally enacted in 1978 and expanded in 1995, the Indiana Product Liability Act "codified the entire field of products liability" law in Indiana. Weigle v. SPX Corp., 729 F.3d 724, 737 (7th Cir. 2013). The Act governs "all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal

4

theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. "The Indiana Supreme Court has stated that it is 'clear the legislature intended that the [Act] govern all product liability actions, whether the theory of liability is negligence or strict liability in tort.'" Wortman v. C.R. Bard, Inc., 2019 WL 6329651, at *6 (S.D. Ind. Nov. 26, 2019) (quoting Dague v. Piper Aircraft Corp., 418 N.E.2d 207, 212 (Ind. 1981)). "There are multiple theories on which a plaintiff can prove that a product was 'defective' under the IPLA: 'A product can be defective because of a manufacturing defect, a design defect, or a lack of adequate instructions and warnings.'" Fisk v. Medtronic, Inc., 2017 WL 4247983, at *4 (N.D. Ind. Sept. 25, 2017) (quoting Weigle v. SPX Corp., 729 F.3d at 731); see also Campbell Hausfeld/Scott Fetzer Company v. Johnson, 109 N.E.3d 953, 956 (Ind. 2018).

The parties agree that the Act subsumes Counts III, IV, V, VIII, and XII, which should be merged into one statutory claim because they are product liability claims seeking personal injury damages. The concept of merger under the Act arose in 2003 "as district courts in Indiana began grappling with complaints containing products liability allegations that did not fit neatly within the structure of the IPLA. . . . [District courts] began using merger to combine separate counts for product liability torts into one statutory claim . . . ." Bailey v. Medtronic, Inc., 2017 WL 6035329, at *5-6 (S.D. Ind. Dec. 6, 2017). Many other district courts have declined to do so, holding that whether claims are merged into a single claim (that can be proven by multiple theories of liability) or are brought as separate claims under the Act (each with its own theory of

5

liability) is "largely a distinction without a difference." Id.; *see also* Hull v. Ethicon, Inc., 2020 WL 1154577, at *5 (S.D. Ind. Mar. 10, 2020); Wortman v. C.R. Bard, Inc., 2019 WL 6329651, at *6; Fisk v. Medtronic, Inc., 2017 WL 4247983, at *4.

The court agrees that the issue is entirely academic. Indiana law provides multiple theories of recovery for products liability under the Act, and the Indiana Pattern Jury Instructions for civil cases contain separate instructions for each theory. See Ind. Code § 34-20-4-1, et seq.; Campbell Hausfeld/Scott Fetzer Company v. Johnson, 109 N.E.3d at 956; Indiana Pattern Jury Instruction (Civil) Chapter 2100 (providing pattern instructions for manufacturing defects); Indiana Pattern Jury Instructions (Civil) Chapter 2300 (providing pattern instructions for design defects and failure to warn). Whether the Halls' claims "are treated as one claim based on three theories of liability or three claims each based on separate theories of liability is of no consequence[,]" Hull v. Ethicon, 2020 WL 1154577, at *5, and "breaking the different theories into separate counts ma[kes] the complaint easier to understand[,]" Bailey v. Medtronic, Inc., 2017 WL 6035329, at *5-6 (S.D. Ind. Dec. 6, 2017) (quoting Fisk v. Medtronic, Inc., 2017 WL 4247983, at *4 (N.D. Ind. Sept. 25, 2017). Accordingly, each of the Halls' claims will proceed individually with its own separate theory of liability.

  1. *Count III (Strict Liability – Failure to Warn) and Count V (Strict Liability – Design Defect)*

The Halls' short-form complaint alleges claims for failure to warn and design defect, both based on strict liability. The Act institutes a negligence standard for both of those claims. Ind. Code § 34-20-2-2; Cavender v. Medtronic, Inc., 2017 WL 1365354, at *3 (N.D. Ind. Apr. 14, 2017) ("Under the IPLA, . . . a negligence standard applies to design defect and failure to warn claims."). Ethicon claims entitlement to summary judgment because the Halls initially pleaded these claims under strict liability instead negligence. Ethicon offers no other reason for why they are entitled to summary judgment on these claims.

The court is unwilling to grant summary judgment on Count III and Count V simply because they were pleaded under a strict liability label when this case was filed as part of a multidistrict litigation in the Southern District of West Virginia, nearly two years before it was transferred to Indiana. Other courts faced with similar circumstances have also declined to dismiss claims simply because they were mislabeled at the pleadings stage. *See* Porogi v. Ethicon, Inc., 2020 WL 4676571, at *6, (N.D. Ind. Aug. 12, 2020) ("The most Ethicon does to address the design defect claim is state that it should fail as a stand-alone tort because Indiana applies a negligence standard, not strict liability. But this is an insufficient response because technically the [plaintiffs] initially pled each theory of manufacturing defect, failure to warn, and design defect under strict liability and not under the IPLA."). Moreover, the Act recognizes "no doctrinal distinction" between negligent and strict liability failure-to-warn claims. Bailey v. Medtronic, Inc., 2017 WL 6035329, at *5 (S.D. Ind. Dec. 6, 2017); *see also* Taylor v.

Monsanto Co., 150 F.3d 806, 808 (7th Cir. 1998); Natural Gas Odorizing, Inc. v. Downs, 685 N.E.2d 155, 163 n.11 (Ind. Ct. App. 1997).

Ethicon isn't entitled to summary judgment on Count III (Strict Liability – Failure to Warn) or Count V (Strict Liability – Design Defect). The court will construe Count III and Count V as incorrectly labeled negligence product liability claims. *Cf.* Lyons v. Leatt Corp., 2015 WL 7016469, at *3 (N.D. Ind. Nov. 10, 2015) ("[T]he Court will construe Count II as an incorrectly labeled strict liability claim . . . .").

### 2. *Count IV (Strict Liability – Defective Product)*

The Act sets forth liability for releasing "into the stream of commerce any product in a defective condition . . . ." Ind. Code § 34-20-2-1. But claims based on the doctrine of strict liability can only be brought if they are against a manufacturer of "a product that is alleged to contain or possess a defective condition . . . ." Ind. Code § 34-20-2-3. Courts often term these types of claims under the Act "manufacturing defects." *See, e.g.*, Simpson v. General Dynamics Ordance and Tactical Systems-Simunition Operations, Inc., 429 F. Supp. 3d 566, 576 (N.D. Ind. 2019). Count IV of the Halls' short-form complaint alleges "Strict Liability – Defective Product." Ethicon contends that it is entitled to summary judgment on this claim because it isn't recognized under the Act (presumably because it isn't brought under the label "manufacturing defect") and is inherently redundant of Counts III and V.

Even though Count IV doesn't bear the "manufacturing defect" label, it's still a strict liability claim against a manufacturer of a product that is alleged to contain a defective condition. That Count IV wasn't initially pleaded in the parlance of the Act when the case was first filed in the Southern District of West Virginia isn't enough to justify summary judgment. *See* Wortman v. C.R. Bard, Inc., 2019 WL 6329651, at *10 n.6 (S.D. Ind. Nov. 26, 2019) (denying defendant's motion to dismiss "Count V: Strict Liability – Defective Product" insofar as it relates to the Halls' theory of manufacturing defect).

Ethicon isn't entitled to summary judgment on Count IV (Strict Liability – Defective Product).

3. *Count VIII (Constructive Fraud) and Count XII (Breach of Implied Warranty)*

The Halls have agreed to dismiss Counts VIII (Constructive Fraud) and XII (Breach of Implied Warranty) to the extent that they don't fall within the purview of the Act. The court will grant Ethicon's summary judgment motion as to Count VIII and Count XII (to the extent that they don't fall within the purview of the Act).

The parties agree that Counts VIII and XII should be merged into one claim under the Act to the extent they sound in tort. As already noted, the court won't merge multiple claims into one statutory claim under the Act. *See* Part IV.A *supra*. Still, the Act governs all Indiana product liability claims, "regardless of the substantive legal theory or theories upon which the action is brought." Ind.

9

Code § 34-20-1-1; *see also* Lyons v. Leatt Corp., 2015 WL 7016469, at *3 (N.D. Ind. Nov. 10, 2015) ("As the Indiana Supreme Court has noted, 'several federal district courts and other panels of the [Indiana] Court of Appeals have held that tort-based breach of warranty claims have been subsumed into the [IPLA].'"); Porogi v. Ethicon, Inc, 2020 WL 4676571, at *3 (N.D. Ind. Aug. 12, 2020) (Count VIII (Constructive Fraud) and Count XII (Breach of Implied Warranty) both subsumed under the Act). The court will treat Count VIII and Count XII as separate claims under the Act, each supported by its own substantive legal theory.

### 4. *Count XVI (Loss of Consortium)*

Ethicon argues that it is entitled to summary judgment on Count XVI (Loss of Consortium) because it's merely derivative of all the Halls' primary claims, which fail as a matter of law. Today's ruling invalidates that argument's premise. *See* Part IV.B *infra*. Ethicon isn't entitled to summary judgment on Count XVI (Loss of Consortium). *Cf.* Doerner v. Swisher Intern, Inc., 272 F.3d 928, 931 (7th Cir. 2001) (loss of consortium claims can be brought under the Act).

### B. *Statute of Limitations*

Finally, Ethicon contends that a two-year statute of limitations bars all of the Halls' claims. Ethicon contends that the Halls' claims accrued on June 27, 2016, when Dr. Lyons told Mrs. Hall that she would need surgery to remove the Prolift mesh. As Ethicon sees it, the Halls were sixteen days too late when they

filed their claims on July 13, 2018. The Halls respond that their claims didn't accrue until sometime after September 21, 2016, when Dr. Lyons explained during postoperative follow-ups that problems with the Prolift mesh caused Ms. Hall's injuries.

Under Indiana law, "a product liability action must be commenced . . . within two (2) years after the cause of action accrues . . . ." Ind. Code § 34-20-3-1(b). This two-year statute of limitations "applies in any product liability action in which the theory of liability is negligence or strict liability in tort," id., as well as claims that are subsumed by the Act. *See, e.g.*, Bagby v. General Motors, LLC, 2018 WL 2388595 (S.D. Ind. May 25, 2018). Indiana has adopted a discovery rule, providing that a cause of action accrues and the "statute of limitations begins to run from the date that the plaintiff knew or should have discovered (1) that the plaintiff suffered an injury or impingement, and (2) that the injury or impingement was caused by the product or act of another." Evenson v. Osmose Wood Preserving Co., 899 F.2d 701, 704-705 (7th Cir. 1990) (citing Barnes v. A.H. Robins Co., 476 N.E.2d 84, 87-88 (Ind. 1985)).

When actions accrue is often a question of fact. Id. at 705. The pertinent question is whether the plaintiff "experienced symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of his cause of action." DuRocher v. Riddell, Inc., 97 F. Supp. 3d 1006, 1029 (S.D. Ind. 2015) (quoting Morgan v. Columbus McKinnon Corp., 837 N.E.2d 546, 549 (Ind. Ct. App. 2005)). "Once a plaintiff's doctor expressly informs the plaintiff that there is a reasonable possibility, if not a probability, that an injury was

11

caused by an act or product, then the statute of limitations begins to run and the issue may become a matter of law." DeGussa Corp. v. Mullens, 744 N.E.2d 407, 411 (Ind. 2001). But "a plaintiff's mere suspicion or speculation that the product caused the injuries is insufficient to trigger the statute." Id. (citing Evenson v. Osmose Wood, 899 F.2d at 705).

Ethicon highlights several key facts. During her June 27, 2016, appointment, Mrs. Hall told Dr. Lyons that the "feeling in [her] pelvic area wasn't right[,]" complaining of abnormal bleeding, pain, pain with intercourse, prolapse, urinary incontinence, and vaginal discharge/itching. Dr. Lyons examined Mrs. Hall, telling her that he "s[aw] a lot of mesh" and that "there [we]re some problems there," ultimately recommending surgery to remove the mesh. Mrs. Hall testified that she was worried because she felt that she "was going to have some problems" if she "didn't have something done or something with that mesh." Ethicon argues that this is enough to show that Mrs. Hall either knew or should have known that she suffered an injury caused by the Prolift mesh.

The Halls respond by highlighting some key facts of their own. When Mrs. Hall first received the Prolift mesh implant in December 2007, her implanting physician, Dr. Walker, told her to expect possible side effects of exposure, extrusion, and pain from the implant. Dr. Lyons confirmed these side effects during Mrs. Hall's June 27, 2016, appointment—when asked what he would have told a patient with Mrs. Hall's symptoms in 2016, Dr. Lyons said: "That it's not uncommon, that we will use estrogen to try to manage it, and then reevaluate it." He then confirmed that mesh exposure doesn't necessarily mean that the

implanted mesh was defective, or that a patient should know or consider the mesh defective. Mrs. Hall said she believed her symptoms were common complications caused by the idiosyncrasies of her body and changes to it over time. It wasn't until postoperative follow-ups with Dr. Lyons that Mrs. Hall was explicitly told that her injuries were caused by defective mesh and weren't simply a common side effect. The Halls contend these facts show that Mrs. Hall would, at most, merely be speculating that the Prolift mesh caused her injuries before her postoperative visits with Dr. Lyons in Autumn 2016.

Based on this record, a reasonable jury could find that Mrs. Hall didn't know and couldn't have been expected to discover that she suffered an injury caused by the Prolift mesh during her June 27, 2016, appointment, and that her claim didn't accrue until Dr. Lyons told her that the Prolift mesh was defective during her postoperative follow-ups in Autumn 2016. *See* DeGussa Corp. v. Mullens, 744 N.E.2d 407 (Ind. 2001). Ethicon isn't entitled to summary judgment on statute of limitations grounds.

## V. Conclusion

For the foregoing reasons, Ethicon's motion for summary judgment [Doc. No. 20] is **GRANTED IN PART AND DENIED IN PART**. The court **GRANTS** Ethicon's motion for summary judgment on Count VIII (Constructive Fraud) and Count XII (Breach of Implied Warranty) to the extent that they don't fall within the purview of the IPLA, and **DENIES** it in all other respects.

SO ORDERED.

13

ENTERED:   November 20, 2020

                                                /s/ Robert L. Miller, Jr.
                                          Judge, United States District Court